## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| HOMEVESTORS OF AMERICA, INC., <br> Plaintiff, | § <br> § <br> § | Case No.: **1:24MCO1344** <br> Underlying Litigation |
| v. | § <br> § <br> § | C.A. No. 22-1583-RGA <br> United States District Court |
| WARNER BROS. DISCOVERY, INC., <br> Defendant. | § <br> § | For the District of Delaware |

## OPPOSED MOTION TO COMPEL COMPLIANCE WITH RULE 45 SUBPOENA TO CALISE PARTNERS, LLC

TO THE HONORABLE JUDGE OF SAID COURT:

Warner Bros. Discovery, Inc. moves this Court to compel the production of documents in response to the subpoena directed to Calise Partners, LLC, dated April 4, 2024 (the "Subpoena") in the underlying action pending in the United States District Court for the District of Delaware, *Homevestors of America, Inc. v. Warner Bros. Discovery, Inc.*, C.A. No. 22-1583-RGA (D. Del.).[1]

### I.     INTRODUCTION

This motion concerns a subpoena served to obtain essential documents from Calise Partners, LLC, the marketing firm used by HomeVestors of America, Inc. ("HomeVestors") in connection with litigation between HomeVestors and Warner Bros. Discovery ("WBD"). HomeVestors brought suit against WBD alleging that WBD's television program titled "Ugliest House in America" infringes HomeVestors' trademarks, injures its business reputation, and is likely to cause dilution of its famous marks. In its initial disclosures, HomeVestors identified its marketing agency, Calise Partners, LLC, d/b/a Imaginuity ("Calise"), as having knowledge of

---

[1] Pursuant to Rule 45(f), WBD files this motion in the court for the district where compliance is required. However, WBD consents to the transfer of this motion to the issuing court in the District of Delaware.

HomeVestors' trademarks, including their use, fame, and goodwill, as well as possessing knowledge of HomeVestors' advertising. HomeVestors does not have an in-house marketing team; instead, HomeVestors relies on Calise for all things brand-awareness, even going so far as to designate Calise's founding chairman as the person most qualified to testify about more than half of the topics for HomeVestors' deposition. Because Calise's marketing of HomeVestors' trademarks lies at the heart of the parties' dispute, WBD served a subpoena on Calise.

Calise refused to produce any emails or documents in response to WBD's subpoena. WBD has made every effort to obtain responsive documents from HomeVestors, but there are critical categories of documents that are solely in Calise's possession and that WBD has not been able to obtain through party discovery. Accordingly, WBD respectfully requests that the Court compel Calise's disclosure of the requested documents.

## II.    RELEVANT FACTUAL BACKGROUND

HomeVestors is a franchised homebuyer that purchases homes for renovation and sale. Ex. 1 (First Am. Compl. ("FAC") ¶ 6). It operates under the moniker "We Buy Ugly Houses" and runs a yearly promotional contest "The Ugliest House of the Year" whereby franchisees can nominate homes for the public to determine which home has endured the most dramatic renovation. Ex. 1 (FAC ¶ 7). HomeVestors now seeks to enjoin the distribution of WBD's television series, alleging that WBD's television program's title is confusingly similar to HomeVestors marks, including the name of its Ugliest House of the Year promotional contest. Ex. 1 (FAC ¶ 76).

A team of Calise employees function as HomeVestor's marketing department, and has provided marketing and media services to HomeVestors and its franchisees since 2011. *See* Ex. 9 *Calise    Partners    Launches    AdVestors*,    IMAGINUITY    (Aug.    1,    2011), https://www.imaginuity.com/blog/calise-partners-launches-advestors/. In this role, Calise runs the

HomeVestors' "Ugliest House of the Year" promotional contest by posting on social media, tallying up the votes, and selecting the winners. Ex. 7 (Second Am. Resp. to Interrog. No. 1-2.) As discussed in greater detail below, some of the key issues in this trademark dispute turn on how Calise marketed HomeVestors' brand, and, in particular, its "Ugliest House of the Year" promotional contest.

HomeVestors also alleges that an employee of a third-party production company working with WBD communicated with Calise employees directly to discuss potential collaboration with HomeVestors on casting for WBD's series. Ex. 1 (FAC ¶ 34). HomeVestors has pointed to this purported outreach as evidence of bad faith on WBD's part (something WBD strenuously denies). Ex. 7 (Second Am. Resp. to Interrog. No. 14.) WBD has been able to obtain only limited communications relating to this outreach, and no internal Calise discussions about it at all. Waldman Decl. ¶ 7.

WBD served a subpoena seeking documents and communications relating to the marketing services Calise provides to HomeVestors, documents showing Calise's costs relating to services rendered to HomeVestors, and payments made by HomeVestors for those services. Ex. 2 (WBD's Subpoena to Calise). The subpoena also sought documents relating to the underlying lawsuit between HomeVestors' and WBD, and Calise's communications with the third-party production company Big Fish Entertainment ("Big Fish"). Ex. 2 (WBD's Subpoena to Calise).

Calise served objections to each of WBD's document requests. Ex. 3 (Calise's Obj. and Resp. to WBD's Subpoena). On May 14, WBD met and conferred with counsel for Calise. Waldman Decl. ¶ 5. During this meeting, WBD's counsel offered to discuss search terms in order to narrow the scope of the requests, which the parties agreed to in principle. However, on May 15,

Calise made an abrupt about-face, and sent an email stating that "Calise will not be producing any e-mails or further documents in response to WBD's subpoena." Ex. 4 at 1; Waldman Decl. ¶ 6.

Since that exchange, WBD has continued to engage in the discovery process with HomeVestors. WBD has worked to obtain as many documents as possible through party discovery, hoping to obviate the need for this motion. Waldman Decl. ¶ 7. And while HomeVestors has continued to produce documents, including as recently as October 28, there are several categories of documents that WBD has been unable to obtain. *Id.* These documents are necessary to WBD's defense against HomeVestors' claims. Accordingly, WBD is forced to proceed with this motion against Calise.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(2) requires a party serving a subpoena to "take reasonable steps to avoid imposing undue burden" on the subject of the subpoena, and allows the serving party to "move the court . . . for an order compelling production." Whether a subpoena subjects a witness to undue burden is a function of the subpoena's reasonableness, which requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it. *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004). "[T]his balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source." *Id.*

### IV.   ARGUMENT AND AUTHORITIES

1.   <u>Calise's Documents Are Central to a Trademark Infringement Analysis and Cannot Be Obtained Through Party Discovery.</u>

WBD served eight narrowly tailored requests for documents and communications relating to Calise's marketing strategy and advertising services for HomeVestors, payments and expenses relating to those services, as well as documents and communications relating to Big Fish, WBD's

television series, and the lawsuit between HomeVestors and WBD. As discussed below, WBD's subpoena easily meets the reasonableness standard because Calise employees have information about HomeVestors' brand that is not accessible by any party to the lawsuit, and Calise's documents and communications about HomeVestors' marketing are central to the trademark infringement analysis.

### a. *HomeVestors Identified Calise as a Key Witness.*

Since the commencement of discovery, HomeVestors has repeatedly identified Calise as a entity with knowledge about HomeVestors' trademarks and the marketing of its brand. For instance, in its initial disclosures, HomeVestors stated that Charlie Calise, founding chairman of Calise Partners and HomeVestors franchisee, has knowledge of HomeVestors' trademarks, including their use, fame, and goodwill, and of HomeVestors' advertising under those marks. Ex. 5 (HomeVestors' Third. Am. Initial Disc.). HomeVestors also designated Mr. Calise as the person most qualified to testify about 17 of WBD's deposition topics including the marketing and promotion of all of HomeVestors' allegedly infringed upon marks, the marketing channels and geographic areas where the marks are promoted, the advertising expenditures for services associated with those marks, market studies concerning the marks, and HomeVestors' business reputation. *See* Ex. 6 (HomeVestors Resp. and Obj. to WBD's Notice of Deposition); Ex. 8 email with designees). Notably, HomeVestors identified Mr. Calise as informed about more topics than all of HomeVestors' employee designees *combined.*

Other Calise employees also provided marketing services on the HomeVestors account. Specifically, HomeVestors states in its interrogatory responses that Calise was "primarily responsible" for advertising the "Ugliest House of the Year" contest, and that four of Calise's employees were involved in selecting contestants for the contest. Ex. 7 (Second Am. Resp. to Interrog. Nos. 1–3). Calise employees also managed public relations on behalf of HomeVestors.

Ex. 8 (Depo. Tr. of Charlie Calise 58:3–9). Based on the discovery HomeVestors' provided to date, Calise played an integral role in devising HomeVestors' entire marketing strategy, including everything from placing articles about HomeVestors to engaging with HomeVestors' customers and franchisees on social media.

### b. Calise's Documents Are Integral to the Infringement and Dilution Analysis.

Calise is the entity most informed about HomeVestors' marketing channels, target market, and general advertising approach, and is keenly aware of HomeVestors' reputation among customers, all of which are factors relevant to HomeVestors' claims of trademark infringement and dilution. Any information about overlap in the parties' marketing efforts is critical evidence in a trademark dispute where the "paramount question is whether one mark is likely to cause confusion with another." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 228 (5th Cir. 2009). In conducting the likelihood of confusion analysis, courts in the Third and Fifth Circuits compare the parties' marketing channels, target markets, and actual sales markets as factors to consider in determining whether consumers are likely to mistake the source of the plaintiff's product or service for that of the defendant.[2] *See, e.g., id.* at 228; *Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 155 (3d Cir. 2024); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 280 (3d Cir. 2001). Given that Calise served as HomeVestors' marketing agency for over a decade, including at all times relevant to the underlying dispute, Calise undoubtedly possesses documents and communications relating to HomeVestors claims of infringement and dilution.

WBD does not seek to compel Calise to re-produce any documents that HomeVestors already produced. HomeVestors has produced some marketing-related documents, including commercials and advertisements, documents reporting statistics about the "Ugliest House of the

---

[2] The underlying action between HomeVestors and WBD is pending in the District of Delaware, where Third Circuit law as to likelihood of confusion will apply.

Year" contest, and a limited set of communications between Calise and HomeVestors pertaining

to the contest.   But there are clear gaps: the produced documents do not relay the details of

HomeVestors' marketing approach, including, for example, communications about HomeVestors'

target and actual customer bases, decisions to pursue certain advertising mediums over others,

ideas about whether to expand into particular markets, and assessments of customer feedback

about HomeVestors's brand.   Calise's internal communications will contain information about the

intricacies of its marketing strategy for HomeVestors, which will weigh for or against a finding of

similarity between HomeVestors' and WBD's marketing channels.   *See e.g., C.V. v. Casa Azul

Spirits, LLC*, No. CV H-22-2972, 2023 WL 7284182, at *4 (S.D. Tex. Nov. 3, 2023) (evidence that

parties marketed to different, but related groups of tequila consumers, weighed against a finding

that marks were competitive); *Autozone, Inc. v. Tri-State Auto Outlet, Inc.*, No. CIV. 04-103-SLR,

2005 WL 1353797, at *10–11 (D. Del. June 7, 2005), vacated, No. CIV.A. 04-103-SLR, 2005 WL

3078938 (D. Del. Oct. 25) (evidence that defendant's customer base did not perform automotive

maintenance and did not sell to commercial businesses weighed against finding of likelihood of

confusion).  Calise's employees' emails to one another will also show not just where Calise places

media mentions of HomeVestors, but also the rationale behind their choice of advertising medium,

which would aid in determining overlap (or lack thereof) between HomeVestors' and WBD's

customer base.   *See Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 154–55 (3d Cir. 2024) (overlap

between marketing strategies increased the likelihood of confusion); *Quantum Fitness Corp. v.

Quantum LifeStyle Ctrs., LLC*, 83 F. Supp. 2d 810, 827 (S.D. Tex. 1999) (parties' print advertising

campaigns targeted different markets, and Court found that factor did not weigh for or against a

finding of likelihood of confusion).

Calise's unvarnished analysis of the successes and failures of their marketing efforts for HomeVestors will be helpful in assessing WBD's intent in using the mark, and the alleged harm caused by the infringement.   The documents produced to-date do not reveal anything about Calise's assessment of the HomeVestors brand.   HomeVestors asserts that it has a sterling reputation, which, if true, might support the notion that WBD acted with intent to trade off the goodwill associated with HomeVestors brand. *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 828 (S.D. Tex. 1999) ("This court can find bad faith only if it finds that [defendant] adopted the Quantum LifeStyle mark with the specific intent of deriving benefit from the reputation or goodwill of Quantum Fitness"); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 722 (3d Cir. 2004) (evidence of appropriation of Plaintiff's goodwill relevant to finding of bad faith intent). But WBD has a basis to question whether HomeVestors actually has such a sterling reputation, and WBD suspects that documents from Calise will shed further light on the true status of HomeVestors' reputation. *See* Ex. 10, Anjeanette Damon et al., *The Ugly Truth Behind "We Buy Ugly Houses,"* PROPUBLICA (May 11, 2023, 6:00 AM), https://www.propublica.org/article/ugly-truth-behind-we-buy-ugly-houses.[3] To the extent that Calise internally discussed HomeVestors' reputation, or discussed strategies to repair it, such documents would be highly relevant.   Documents evidencing such communications are highly relevant and unavailable from any other source.

    2.    Calise's Objections Are Otherwise Improper.

In addition to its general relevance objections, Calise has interposed objections based on its position that the requests seek confidential information and are overly burdensome.   These objections are meritless.   First, there is a protective order in place in the underlying litigation that

---

[3] ProPublica's "Ugly Truth" series currently includes 10 articles about the HomeVestors investigation published between May 2023 through January 2024.

adequately addresses Calise's concerns regarding any claimed confidential information. *Apollo MedFlight, LLC v. BlueCross BlueShield of Texas*, No. 2:18-CV-166-Z-BR, 2020 WL 520608, at *9 (N.D. Tex. Jan. 13, 2020) ("Any concern by BlueCross regarding the proprietary and confidential nature of the documents sought was resolved by the Agreed Protective Order."); *see* Ex. 11 (Stipulated Protective Order).

Second, Calise's claim that the requests are overly burdensome is unsubstantiated. "A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive . . . . Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014). Calise has not put forward any evidence of burden. In fact, WBD's counsel offered to exchange search terms in attempt to alleviate any burden ostensibly imposed on HomeVestors, but Calise's counsel refused to engage.

All of Calise's objections are baseless and provide no reason for Calise to resist discovery. The Court should compel Calise's compliance with the subpoena.

3.    The Court Should Require Calise to Pay WBD's Attorneys Fees

When a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

Calise and its counsel failed to provide the requested documents and, after initially agreeing to discuss search terms, subsequently refused to meet and confer to potentially avoid motion practice. Accordingly, sanctions against Calise and its counsel are proper. WBD requests permission to submit an application for these fees with supporting documentation.

## V.   CONCLUSION

Calise has exclusive possession of documents that go to the heart of the litigation but refuses to produce them in response to a valid subpoena. WBD respectfully requests that this Court grant WBD's motion and compel Calise to comply with WBD's third party subpoena.

Dated: November 1, 2024                        Respectfully submitted,

JACKSON WALKER LLP

By: /s/ Scott Weatherford
Scott Weatherford
State Bar No. 24079554
Shannon M. Wright
State Bar No. 24131783
sweatherford@jw.com
swright@jw.com
100 Congress Ave., Suite 1100
Austin, TX 78701
Telephone: (512) 236-2000
Facsimile: (512) 236-2002


Aaron J. Moss (pro hac vice forthcoming)
Joshua M. Geller (pro hac vice forthcoming)
Hannah G. Waldman (pro hac vice forthcoming)
AMoss@ggfirm.com
JGeller@ggfirm.com
HWaldman@ggfirm.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, CA  90067
Telephone:    310-553-3610
Facsimile:    310-553-0687


**ATTORNEYS FOR DEFENDANT**
**WARNER BROS. DISCOVERY, INC.**

10